## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MELANY L. CHILA,<br><br>          Plaintiff,<br>v.<br><br>CAMDEN COUNTY CORRECTIONAL<br>FACILITY,<br><br>          Defendant. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 16-cv-8270(JBS-AMD)<br><br>**OPINION** |

APPEARANCES:

Melany L. Chila, Plaintiff Pro Se
290 Kings Highway, Apt. C
Clarksboro, NJ 08020

**SIMANDLE, District Judge:**

## I.    <u>INTRODUCTION</u>

1.    Plaintiff Melany L. Chila seeks to bring a civil rights complaint pursuant to 42 U.S.C. § 1983 against Camden County Correctional Facility ("CCCF") for allegedly unconstitutional conditions of confinement, violation of her freedom of religious exercise, and unlawful strip search. Complaint, Docket Entry 1.

2.    At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. 7).

## II. __BACKGROUND__

3.   The following factual allegations are taken from the Complaint and are accepted for purposes of this screening only. The Court has made no findings as to the truth or merits of Plaintiff's allegations.

4.   Plaintiff alleges she endured unconstitutional conditions of confinement in CCCF due to an overcrowded, rodent infested, and unsanitary facility where she was denied medical care. The Complaint also states that CCCF personnel unlawfully strip searched Plaintiff and violated her exercise of religion by confiscating her head covering, denying her access to a Quran, and prohibiting her from exiting her CCCF cell for religious worship. Complaint §§ III, V.

5.   Plaintiff alleges that these events occurred during "various dates 5-5-07 – 8-6-07 [and] Jan 5, 2016 – 1-15-16." *Id.* § III(B).

6.   Plaintiff expressly denies sustaining any injuries from the alleged events, *id.* § IV ("no"), while simultaneously contending that she has "anxiety and sleep issues due to the inhumane way I was treated over unpaid tickets." *Id.* § V.

7.   Plaintiff seeks $50,000 in relief. *Id.* § V.

## III. __STANDARD OF REVIEW__

8.   Section 1915(e)(2) requires a court to review complaints prior to service in cases in which a plaintiff is

proceeding *in forma pauperis*. The Court must *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) because Plaintiff is proceeding *in forma pauperis*.

9.  To survive *sua sponte* screening,[1] the Complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014). While *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

---

[1] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Samuels v. Health Dep't*, No. 16-1289, 2017 WL 26884, slip op. at *2 (D.N.J. Jan. 3, 2017) (citing *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012)).

## IV. DISCUSSION

### A. Claims Against CCCF: Dismissed With Prejudice

10.   Plaintiff brings this action pursuant to 42 U.S.C. § 1983[2] for alleged violations of Plaintiff's constitutional rights. To state a claim for relief under § 1983, a plaintiff must allege: (a) the violation of a right secured by the Constitution or laws of the United States; and (b) that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

11.   CCCF, who is the named defendant in the Complaint, is not a "person" within the meaning of § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Crawford v. McMillian*, 660 F. App'x 113, 116 (3d Cir. 2016) ("[T]he prison is not an entity subject to suit under 42 U.S.C. § 1983"); *Grabow v. Southern State Corr. Facility*, 726 F. Supp. 537, 538–39 (D.N.J. 1989) (correctional facility is not a "person" under § 1983).

---

[2] Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983.

12.  Given that CCCF is not a "person" for § 1983 purposes, the Complaint's claims against CCCF must be dismissed with prejudice.

### B.  Conditions Of Confinement Claims

#### 1. Overcrowding Claim: Dismissed With Prejudice as to 2007 Incarceration and Dismissed Without Prejudice as to 2016 Incarceration

13.  The Complaint states: "Held me in a 12x7 holding tank with a 7ft bench. There were 6 other women in there . . . Forced to sleep on a matt under the toilet." Complaint §§ III(C), V (referred to as Plaintiff's "2007 Overcrowding Claim" regarding conditions of her May 5, 2007 – August 6, 2007 incarceration, and as Plaintiff's "2016 Overcrowding Claim" as to conditions from her January 5, 2016 – January 15, 2016 incarceration).

14.  As to the 2007 Overcrowding Claim, the allegedly unconstitutional conditions of confinement would have been immediately apparent to Plaintiff at the time of detention; therefore, the two-year statute of limitations[3] for Plaintiff's claims expired in November 2014 at the latest, well before this

---

[3] Civil rights claims under § 1983 are governed by New Jersey's limitations period for personal injury and must be brought within two years of the claim's accrual. *See Wilson v. Garcia*, 471 U.S. 261, 276 (1985); *Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir. 2010). "Under federal law, a cause of action accrues 'when the plaintiff knew or should have known of the injury upon which the action is based.'" *Montanez v. Sec'y Pa. Dep't of Corr.*, 773 F.3d 472, 480 (3d Cir. 2014) (quoting *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009)).

Complaint was filed on November 4, 2016. (Docket Entry 1.)
Plaintiff has filed this lawsuit too late to complain about
events in 2007. Although the Court may toll, or extend, the
statute of limitations in the interests of justice, tolling is
not warranted in this case because the state has not "actively
misled" Plaintiff as to the existence of her cause of action,
there are no extraordinary circumstances that prevented her from
filing the claim, and there is nothing to indicate she filed the
claim on time but in the wrong forum. *Omar v. Blackman*, 590 F.
App'x 162, 166 (3d Cir. 2014). As more than two years have
passed since Plaintiff's claims accrued, the 2007 Overcrowding
Claim is dismissed with prejudice, meaning Plaintiff may not
file an amended complaint concerning her 2007 incarceration.
*Ostuni v. Wa Wa's Mart*, 532 F. App'x 110, 112 (3d Cir. 2013)
(per curiam) (affirming dismissal with prejudice due to
expiration of statute of limitations).

15.  As to the 2016 Overcrowding Claim, the Complaint does
not allege sufficient facts to support a reasonable inference
that a constitutional violation from overcrowding has occurred
in order to survive this Court's review under § 1915.

16.  The mere fact that an individual is lodged temporarily
in a cell with more persons than its intended design does not
rise to the level of a constitutional violation. *See Rhodes v.
Chapman*, 452 U.S. 337, 348–50 (1981) (holding double-celling by

itself did not violate Eighth Amendment); *Carson v. Mulvihill*, 488 F. App'x 554, 560 (3d Cir. 2012) ("[M]ere double-bunking does not constitute punishment, because there is no 'one man, one cell principle lurking in the Due Process Clause of the Fifth Amendment.'" (quoting *Bell v. Wolfish*, 441 U.S. 520, 542 (1979))). More is needed to demonstrate that such crowded conditions, for a pretrial detainee, shocks the conscience and thus violates due process rights. *See Hubbard v. Taylor*, 538 F.3d 229, 233 (3d Cir. 2008) ("*Hubbard II*") (noting due process analysis requires courts to consider whether the totality of the conditions "cause[s] inmates to endure such genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them") (citing *Union Cnty. Jail Inmates v. DiBuono*, 713 F.2d 984, 992 (3d Cir. 1983) (quoting *Bell*, 441 U.S. at 542)). Some relevant factors are the length of the confinement(s), whether plaintiff was a pretrial detainee or convicted prisoner, any specific individuals who were involved in creating or failing to remedy the conditions of confinement, any other relevant facts regarding the conditions of confinement, etc.

17.  Here, the Complaint does not meet the pleading requirements to state a plausible cause of action for unconstitutional overcrowding, and the 2016 Overcrowding Claim

is dismissed without prejudice for failure to state a claim. 28
U.S.C. § 1915(e)(2)(b)(ii).

> ### 2. Inadequate Medical Care Claim: Dismissed With Prejudice as to 2007 Incarceration and Dismissed Without Prejudice as to 2016 Incarceration

18. Plaintiff claims that she was "[d]enied medical" and
received "[n]o medical attention." Complaint §§ III(C), V
(referred to as Plaintiff's "2007 Inadequate Medical Care Claim"
regarding events from her 2007 incarceration, and as Plaintiff's
"2016 Inadequate Medical Care Claim" regarding events from her
2016 detention).

19. As to the 2007 Inadequate Medical Care Claim,
Plaintiff's medical needs and CCCF's attention to them would
have been immediately apparent to Plaintiff at the time of
detention; therefore, the two-year statute of limitations for
Plaintiff's claims expired in November 2009 at the latest.
Accordingly, the 2007 Inadequate Medical Care Claim is dismissed
with prejudice, meaning Plaintiff may not file an amended
complaint concerning her 2007 incarceration.

20. As to the 2016 Inadequate Medical Care Claim, the
Complaint does not allege sufficient facts supporting a
reasonable inference that a constitutional violation from
inadequate medical care has occurred.

21. The Due Process Clause of the Fourteenth Amendment
applies to pretrial detainees' claims of inadequate medical

care. *Bocchino v. City of Atlantic City*, 179 F. Supp.3d 387, 403 (D.N.J. 2016). In the context of a claim for violation of the right to adequate medical care, a pretrial detainee must allege the following two elements: (a) a serious medical need; and (b) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

22.  To satisfy *Estelle*'s first prong, an inmate must demonstrate that her medical needs are serious. *Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003) (internal quotations and citations omitted).

23.  *Estelle*'s second element is subjective and "requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need." *Holder v. Merline*, No. 05-1024, 2005 WL 1522130, at *4 (D.N.J. June 27, 2005) (citing *Natale*, 318 F.3d at 582).

24.  Here, Plaintiff's cursory contentions of "no medical attention" and "denied medical" are insufficient to establish a Fourteenth Amendment inadequate medical care claim. The Complaint makes no factual demonstration whatsoever with respect to either a serious medical need or deliberate indifference to such need by CCCF personnel. Accordingly, the 2016 Inadequate

Medical Care Claim is dismissed without prejudice for failure to state a claim. 28 U.S.C. § 1915(e)(2)(b)(ii).

### 3. Uncleanly Conditions Claim: Dismissed With Prejudice as to 2007 Incarceration and Dismissed Without Prejudice as to 2016 Incarceration

25. Plaintiff alleges that "the walls were damp. There was bugs, rodents and fieces [sic]." Complaint § III(C) (referred to as Plaintiff's "2007 Uncleanly Conditions Claim" regarding events from her 2007 incarceration, and as Plaintiff's "2016 Uncleanly Conditions Claim" regarding her 2016 incarceration).

26. As to the 2007 Uncleanly Conditions Claim, the conditions referenced in the Complaint would have been immediately apparent to Plaintiff at the time of detention; therefore, the two-year statute of limitations for Plaintiff's claims expired in 2009 at the latest, well before this Complaint was filed on November 4, 2016. The 2007 Uncleanly Conditions Claim is dismissed with prejudice and Plaintiff may not file an amended complaint concerning her 2007 incarceration.

27. As to the 2016 Uncleanly Conditions Claim, the Complaint does not allege sufficient facts to satisfy either the objective or subjective components of the Fourteenth Amendment Due Process analysis pertinent to the Uncleanly Conditions Claim, as explained in the paragraphs below.

28. A failure of prison officials to provide minimally civil conditions of confinement to pre-trial detainees violates

their right not to be punished without due process of law. *Reynolds v. Wagner*, 128 F.3d 166, 173-74 (3d Cir. 1997). Pursuant to the Fourteenth Amendment's Due Process Clause, prison officials must satisfy "basic human needs -- *e.g.*, food, clothing, shelter, medical care, and reasonable safety." *Helling v. McKinney*, 509 U.S. 25, 32 (1993). When a pretrial detainee complains about the conditions of her confinement, courts are to consider, in accordance with the Fourteenth Amendment, whether the conditions "amount to punishment prior to an adjudication of guilt in accordance with law." *Hubbard v. Taylor*, 399 F.3d 150, 158 (3d Cir. 2005) ("*Hubbard I*"). Courts must inquire as to whether the conditions "'cause [detainees] to endure [such] genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them.'" *Id*. at 159-60 (citations omitted).

29. The objective component of this unconstitutional punishment analysis examines whether "the deprivation [was] sufficiently serious," and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007) (citing *Bell*, 441 U.S. at 538-39, n.20), *cert. denied*, *Phelps v. Stevenson*, 552 U.S. 1180 (2008).

30. Here, Plaintiff's 2016 Uncleanly Conditions Claim does not satisfy either the objective or subjective components of the Fourteenth Amendment Due Process analysis.

31. As to the test's objective prong, Plaintiff does not offer any facts demonstrating that she was subjected to genuine privation and hardship over an extended period of time. While unsanitary living conditions may give rise to a conditions of confinement claim, the Complaint here expresses nothing but Plaintiff's displeasure with less than perfect jail conditions. Plaintiff does not offer any facts showing that any of the supposed conditions potentially jeopardized her health or caused her any injuries. In fact, Plaintiff expressly denies sustaining any injuries. (Complaint § IV.) Plaintiff has not offered facts plausibly suggesting that her housing conditions were imposed as "punishment." Moreover, courts have, in fact, "routinely recognized that '[k]eeping vermin under control in jails, prisons and other large institutions is a monumental task, and that failure to do so, without any suggestion that it reflects deliberate and reckless conduct in the criminal law sense, is not a constitutional violation." *See*, *e.g.*, *Holloway v. Cappelli*, No. 13-3378, 2014 WL 2861210, at *5 (D.N.J. June 24, 2014) (citing *Chavis v. Fairman*, 51 F.3d 275, *4 (7th Cir. 1995) (internal citations omitted)).

32.  As to the constitutional test's subjective prong, Plaintiff has failed to allege facts showing, or from which this Court could infer, that any CCCF personnel were aware of, and disregarded, a substantial risk to her health and safety from uncleanly conditions. Plaintiff's displeasure with conditions she lists is not actionable; there are no facts indicating any jail personnel acted with a culpable state of mind.

33.  Accordingly, the 2016 Uncleanly Conditions Claim is dismissed without prejudice for failure to state a claim. 28 U.S.C. § 1915(e)(2)(b)(ii).

34.  As to Plaintiff's three conditions of confinement claims (i.e., 2016 Overcrowding, 2016 Inadequate Medical Care, and 2016 Uncleanly Conditions), she may be able to amend the Complaint to particularly identify adverse conditions that were caused by specific state actors, that caused Plaintiff to endure genuine privations and hardship over an extended period of time, that were excessive in relation to their purposes, that exhibited deliberate indifference by prison personnel to a serious medical need, and/or that posed a substantial risk to her health and safety. To that end, the Court shall grant Plaintiff leave to amend the Complaint within 30 days after the date this Opinion and Order are entered on the docket.[4]

---

[4] The amended complaint shall be subject to screening prior to service.

35.  Plaintiff is further advised that any amended complaint must plead specific facts regarding the overcrowded conditions of confinement, inadequate medical care, and unclean living conditions. In the event Plaintiff files an amended complaint, Plaintiff must plead sufficient facts to support a reasonable inference that a constitutional violation has occurred in order to survive this Court's review under § 1915.[5]

36.  Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and cannot be utilized to cure defects in the amended complaint, unless the relevant portion is specifically incorporated in the new complaint. 6 Wright, Miller & Kane, Federal Practice and Procedure 1476 (2d ed. 1990) (footnotes omitted). An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. *Id.* To avoid confusion, the safer course is to file an amended complaint that is complete in itself. *Id.* The amended

---

[5] To the extent the Complaint seeks relief for conditions Plaintiff encountered prior to November 4, 2014, those claims are barred by the statute of limitations as explained in this Opinion. Therefore, in the event Plaintiff elects to file an amended complaint, she should limit her complaint to events and conditions during confinements from which she was released after November 4, 2014.

complaint may not adopt or repeat claims that have been dismissed with prejudice by the Court.

### C. **Exercise of Religion Claim: Dismissed With Prejudice as to 2007 Incarceration and Dismissed Without Prejudice as to 2016 Incarceration**

37. Plaintiff states that she is "a Muslim American. I was denied my hijab. The jail took it off of me. They refused to give me a Quran . . . I was unable to pray because they refused to let me out of the cell. Correctional Officer Ache took my hijab and told me I cannot cover my hair at all . . . I was subjected to men seeing my figure and my hair." Complaint §§ III(B), V. Plaintiff claims violation of "Freedom of Religious Act." *Id*. § II(B) (referred to as Plaintiff's "2007 Exercise of Religion Claim" regarding her detention in 2007, and her "2016 Exercise of Religion Claim" regarding her 2016 incarceration).

38. For screening purposes only, the Court construes these terms in the 2007 and 2016 Exercise of Religion Claims as follows: hijab refers to a head covering worn in public by Muslim women according to religious code; Quran refers to the sacred text of Islam; and Plaintiff's reference to a hair covering means the Islam religion's requirement for women to cover their hair in public. The Court makes no finding about the truth or actual merits, if any, of Plaintiff's 2007 or 2016 Exercise of Religion Claims.

39.  The Court construes the 2007 and 2016 Exercise of Religion Claims as seeking relief under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc, *et seq.*, which provides, in relevant part: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a).

40.  "RLUIPA protects 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief[.]'" *Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015) (quoting 42 U.S.C. § 2000cc-5(7)(A)).

41.  To state a claim under RLUIPA, a prisoner must establish that her religious exercise has been "substantially burdened." "A substantial burden exists for the purposes of RLUIPA if '(1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR (2) the government puts substantial pressure on an adherent to

16

substantially modify his behavior and to violate his beliefs."
*Banks v. Pennsylvania Dep't of Corr.*, 601 F. App'x 101, 105 (3d
Cir. 2015) (citing *Washington v. Klem*, 497 F.3d 272, 280 (3d
Cir. 2007)). *See also Muhammed v. City of New York Dep't of
Corr.*, 904 F. Supp. 161, 188 (S.D.N.Y. 1995) (in order to
demonstrate "substantial burden," a plaintiff must show that the
government's action pressured him to commit an act forbidden by
his religion or prevented him from engaging in conduct or having
a religious experience mandated by his faith; the burden must be
more than an inconvenience) (citations omitted); *Jones v.
Shabazz*, No. 08-20697, 2009 WL 3682569 at *2 (5th Cir. 2009) (a
government action or regulation only creates a "substantial
burden" if it truly pressures an adherent to significantly
modify his religious behavior and significantly violate his
religious beliefs) (citing *Adkins v. Kaspar*, 393 F.3d 559, 567
(5th Cir., 2004)).

42.  Once a claimant satisfies the "substantial burden"
element, the burden shifts to the government to show that the
burden on the prisoner's religious exercise furthers a
"compelling governmental interest" and "is the least restrictive
means of achieving that interest." *Washington*, 497 F.3d at 277.
The "compelling interest" standard is context-specific and
deferential to prison authorities' choices about how to run
their institution. *Banks*, 601 F. App'x at 105 (citing

17

*Washington*, 497 F.3d at 283 (citing *Cutter v. Wilkinson*, 544 U.S. 709, 722-23 (2005))). "We do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety." *Cutter*, 544 U.S. at 722. "A prison policy that 'is related to maintaining good order' serves a compelling government interest." *Banks*, 601 F. App'x at 105 (citing *Baranowski v. Hart*, 486 F.3d 112, 125 (5th Cir. 2007)).

43.  Plaintiff's 2007 Exercise of Religion Claim is barred by the four-year statute of limitations for RLUIPA claims.[6] Plaintiff filed suit on November 4, 2016. (Docket Entry 1.) To be timely under RLUIPA, she would have had to file the Complaint on or before August 6, 2011 with respect to claims arising from her 2007 incarceration period. Accordingly, the 2007 Exercise of Religion Claim will be dismissed with prejudice, and Plaintiff may not amend the complaint with respect to her 2007 Claim.

44.  As to the 2016 Exercise of Religion Claim, the Complaint does not sufficiently allege events or conduct that constituted a substantial burden on Plaintiff's free exercise of her religion.

---

[6] RLUIPA does not contain its own statute of limitations period, but civil claims, such as RLUIPA claims, "arising under an Act of Congress enacted after [December 1, 1990]," have a four-year period of limitations. 28 U.S.C. § 1658 (2006); *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004).

45.  First, Plaintiff's claims with respect to her hijab,
Quran access, and hair exposure during the period "Jan 5, 2016 –
1-15-16" (*id.* at § III(B)) may have constituted an intrusion
upon Plaintiff's prayers and practices on some occasions during
this brief ten-day period of 2016 incarceration, but these
events were relatively short-term and therefore do not
constitute a substantial interference. *See*, *e.g.*, *Norwood v.
Strada*, 249 F. App'x 269, 272 (3d Cir. 2007) (finding that "a
short [seven-day] denial of a [religious] diet during an
emergency lock-down" was a "mere de minimis intrusion" and not a
"substantial burden"; stating that "it is incredible that in
such a short time period Norwood would have been forced to
abandon one of the precepts of his religion, or that he would
have felt substantial pressure to modify his beliefs").[7] Thus,
the Complaint fails to allege sufficient facts to support
Plaintiff's Exercise of Religion Claim as to CCCF's hijab

---

[7] *See also Canell v. Lightner*, 143 F.3d 1210, 1215 (9th Cir.
1998) (correctional officer's efforts to convert plaintiff-
inmate to Christianity during a two month period did not
constitute a substantial burden on plaintiff's free exercise of
religion, as they were "relatively short-term and sporadic"
intrusions that did not constitute a substantial interference on
her free exercise of religion); and *Lawson v. Carney*, No. 2:15-
cv-184-RMP, 2017 WL 4322408, at *7 (E.D. Wash. Sept. 28, 2017)
("The interference must be more than an irregular or short-term
occurrence. *Canell v. Lightner*, 143 F.3d 1210, 1215 (9th Cir.
1998) (finding that the sporadic interruptions of prayer the
inmate experienced on at most 18 occasions did not constitute a
'substantial burden').").

confiscation, Quran denial, and prevention of hair covering.[8] The
challenged conduct, if it occurred, did not substantially burden
Plaintiff's practices as a Muslim, within the meaning of the
RLUIPA.

46. Second, Plaintiff's claim that she "was unable to pray
because they refused to let me out of the cell" (Complaint §
III(C)) during the period "Jan 5, 2016 – 1-15-16" (*id*. at §
III(B)) does not specify facts demonstrating how, if at all,
CCCF's movement restrictions constituted anything more than the
jail's reasonable interest in maintenance of the facility's
safety, security, and order. *See Cole v. Danberg*, No. 10-088-
GMS, 2015 WL 5437083, at *5 (D. Del. Sept. 14, 2015) ("The
drafters of RLUIPA were mindful that discipline, order and
security are urgent in penal institutions, and they therefore
anticipated that courts would apply the RLUIPA test 'with due
deference to the experience and expertise of prison and jail
administrators in establishing necessary regulations and
procedures to maintain good order, security and discipline,
consistent with consideration of costs and limited resources.'

---

[8] The Court notes that Plaintiff's complaints about CCCF's
refusal to permit hair covering may also have been reasonably
related to legitimate and compelling interests in maintaining
facility order and safety, which would disqualify these
challenged prison decisions from being actionable "substantial
burdens" under the RLUIPA. *See Cutter*, 544 U.S. 709, 722 (2005);
*Banks v. Pennsylvania Dep't of Corr.*, 601 F. App'x 101, 105 (3d
Cir. 2015).

*See Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005). As observed by the Supreme Court in *Holt*, prison officials are experts in running prisons and evaluating the likely effects of altering prison rules, and courts should respect that expertise"). Thus, CCCF's "refus[al] to let [Plaintiff] out of the cell" (Complaint § III(C)), if it occurred, did not substantially burden Plaintiff's practices as a Muslim, within the meaning of the RLUIPA.

47. Liberally construing the Amended Complaint as this Court is required to do (*Mala*, 704 F.3d at 245), Plaintiff has not alleged sufficient facts to plausibly support a reasonable inference that a violation of the RLUIPA occurred in order to survive review under § 1915. The Complaint's allegations are inadequate to state a claim to relief that is plausible on its face, and the 2016 Exercise of Religion claim is dismissed without prejudice. However, the Court shall grant Plaintiff leave to amend the Complaint to satisfy the pleading requirements for this claim. If Plaintiff elects to do so, she may file an amended complaint within 30 days of the date this Opinion and Order are entered on the docket.[9]

---

[9] To the extent the Complaint seeks relief for violations of the RLUIPA that Plaintiff experienced prior to November 4, 2012, those claims are barred by the four-year statute of limitations applicable to RLUIPA claims. In the event Plaintiff elects to file an amended complaint, she should limit her complaint to confinements in which she was released after November 4, 2012.

### D. **Strip Search Claim: Dismissed Without Prejudice**

48.  Plaintiff contends: "They stripped search [sic] me."
Complaint § V (referred to as Plaintiff's "Strip Search Claim").

49.  Plaintiff's cursory statement does not sufficiently
allege a constitutional violation for an improper strip search.
Under the Fourth Amendment, inmates have a limited right of
bodily privacy "subject to reasonable intrusions necessitated by
the prison setting." *Parkell v. Danberg*, 833 F.3d 313, 325 (3d
Cir. 2016). This right is very narrow, however. *Id.* at 326.

50.  "The test of reasonableness under the Fourth Amendment
. . . requires a balancing of the need for the particular search
against the invasion of personal rights that the search entails.
Courts must consider the scope of the particular intrusion, the
manner in which it is conducted, the justification for
initiating it, and the place in which it is conducted." *Bell*,
441 U.S. at 559. A prisoner search policy is constitutional if
it strikes a reasonable balance between the inmate's privacy and
the needs of the institution. *Parkell*, 833 F.3d at 326 (citing
*Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 132
S. Ct. 1510, 1515, 1517 (2012)).

51.  Here, the Strip Search Claim's generalized allegation
is insufficient to state a claim for relief, in the absence of
further facts regarding the circumstances of the search. For

22

example, the Complaint offers no facts regarding the search's manner, scope, or circumstances.

52.    Therefore, the Strip Search Claim is dismissed without prejudice. The Court shall grant Plaintiff leave to amend the Complaint to satisfy the requisite pleading requirements for this claim. If Plaintiff elects to do so, she may file an amended complaint within 30 days of the date this Opinion and Order are entered on the docket.[10]

## V.    CONCLUSION

For the reasons stated above:

(1) the Complaint's claims against CCCF are dismissed with prejudice;

(2) the Complaint's (a) conditions of confinement claims as to (i) overcrowding, (ii) inadequate medical care, and (iii) unclean living space; (b) claims for violation of the RLUIPA;

---

[10] Plaintiff has not specified the date on which the strip search occurred. To the extent the Complaint seeks relief for events Plaintiff encountered during confinement prior to November 4, 2014, those claims are barred by the statute of limitations. As explained above, claims brought under § 1983 are governed by New Jersey's two-year limitations period for personal injury. *See Wilson*, 471 U.S. at 276; *Dique*, 603 F.3d at 185. The allegedly unlawful nature of the strip search that occurred at CCCF would have been immediately known by Plaintiff at the time of the search; therefore, if the allegedly illegal search occurred prior to November 4, 2014, the statute of limitations for Plaintiff's claim has expired and it must be dismissed with prejudice. If the allegedly illegal search occurred within the statute of limitations period, Plaintiff may amend her Complaint to provide the supporting facts.

and (c) unlawful strip search claim that arose during Plaintiff's 2007 incarceration are dismissed with prejudice as time-barred; and

(3) the Complaint's (a) conditions of confinement claims as to (i) overcrowding, (ii) inadequate medical care, and (iii) unclean living space; (b) claims for violation of the RLUIPA; and (c) unlawful strip search claim that arose during Plaintiff's 2016 incarceration are dismissed without prejudice for failure to state a claim. 28 U.S.C. § 1915(e)(2)(b)(ii).

An appropriate order follows.

**April 9, 2018**                                    **s/ Jerome B. Simandle**
Date                                                          JEROME B. SIMANDLE
                                                                 U.S. District Judge